UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Larry Vining,

    Plaintiff(s),

v.

United States of America,

    Defendant(s).
_____/

Case No. 05-80037 & 08-13156

Honorable Nancy G. Edmunds

**ORDER DENYING DEFENDANT'S MOTION TO VACATE OR SET ASIDE CONVICTION AND SENTENCE [46]**

Defendant Larry Vining ("Defendant" or "Vining") challenges the validity of his conviction pursuant to Title 28, United States Code, Section 2255 ("section 2255"). Defendant sets forth two separate grounds for relief, to which the Government has replied. For the reasons stated herein, Defendant's motion is DENIED.

**I.    Facts and Procedural History**

On June 19, 2004, at approximately 4:00 a.m., Pontiac Police Officer Aaron Sailor was on routine patrol in the area of Huron and Dwight when he noticed a burgundy Buick traveling at a high rate of speed. The officer positioned his patrol car behind the Buick, activated the overhead lights, and used a spotlight to illuminate the interior of the Buick. At that time, the driver looked back at the patrol car and then reached down towards the center of the vehicle. Officer Sailor was able to see the driver's face and a female passenger. The driver of the Buick stopped the vehicle, immediately exited, and fled on foot through the neighborhood. Officer Sailor chased the driver, but eventually lost sight

of him. Officer Sailor returned to the Buick and spoke with the female passenger, later identified as Nikitae Kuhn, who was still sitting inside the vehicle. Ms. Kuhn provided information that eventually led to the identification of the driver. Officer Sailor searched the vehicle and found a loaded handgun with an obliterated serial number underneath the driver's seat. Officer Sailor returned to the police station where he obtained a photograph of the driver. Officer Sailor identified Larry Vining as the driver and person who fled during the traffic stop.

Ms. Kuhn testified at a State preliminary examination hearing while under oath, and subject to cross examination, but was unavailable at the time of trial. Accordingly, portions of her prior testimony was read into the record. Ms. Kuhn was riding with Mr. Vining at the time of the traffic stop. She testified that when the police stopped the vehicle, Mr. Vining took a handgun from his waistband, put it on the floor and ran. Ms. Kuhn remained inside the vehicle and spoke to the officer once he returned to the car.

On January 13, 2005, a federal grand jury returned a one count indictment against Vining, charging him with felon in possession of a firearm, in violation of Title 18, United States Code, Section 922(g)(1). On May 6, 2005, Mr. Vining was found guilty after a two-day jury trial. On August 9, 2005, this Court sentenced Mr. Vining to 84 months. Mr. Vining filed a timely notice of appeal. On June 25, 2007, his conviction was affirmed by the Sixth Circuit Court of Appeals. Thereafter, on July 22, 2008, Defendant filed the instant motion pursuant to section 2255.

**II.    Analysis**

In his present motion, defendant argues that his conviction should be set aside or vacated because (1) Richard Taylor rendered ineffective assistance during the handling of

Vining's state court matter; and (2) Dennis Szokolay rendered ineffective assistance during Vining's trial in federal court. Both claims lack merit.

A claim of ineffective assistance of counsel is judged under a two-part test, the first of which requires a showing that the performance of counsel fell below an objective standard of reasonableness according to prevailing norms of the legal profession. *Strickland v. Washington*, 466 U.S. 668, 690 (1984); *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992). Counsel's performance is deficient if it falls "outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Judicial review of an attorney's performance is very deferential. Thus, reviewing courts should, "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered trial strategy." *Id.* at 689. "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690.

Under the second part of the two-part *Strickland* test, counsel's deficient performance must also have prejudiced the accused. *Id.* at 687. Counsel's deficiency results in prejudice if "there is a reasonable probability that, but for counsel's unprofessional errors the result of the proceeding would have been different." *Id.* at 694. "[T]he threshold issue is not whether [defendant's] attorney was inadequate; rather it is whether he was so *manifestly* ineffective that defeat was snatched from the hands of probable victory." *Morrow*, 977 F.3d at 229. In determining whether counsel made serious errors, the standard to which an attorney is held is not that of the most astute counsel, but rather, that of "reasonably effective assistance." *O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994); *cf.*, *Morrow*,

3

977 F.3d at 230 ("[defendant] is not entitled to the most canny lawyer available, only an adequate one").

In the instant matter, Mr. Vining received more than merely competent, reasonably effective assistance of counsel at his preliminary examination in state court and during his trial in federal court. Although the outcome was not what he envisioned, Mr. Vining nevertheless received assistance from skilled advocates who exercised sound professional judgment on his behalf.

> **A.** **Richard Taylor provided effective assistance during Mr. Vining's state preliminary examination.**

In his first claim relative to state court counsel, Mr. Vining claims Mr. Taylor met with him for roughly five minutes before the preliminary examination. However, the record and Mr. Taylor's recollection of the events are inconsistent with this contention. The state court preliminary examination was held on two separate dates. The first hearing took place on or about August 17, 2004 and was continued on August 24, 2004. Mr. Taylor represented Mr. Vining at both hearings and he conducted vigorous cross-examinations of the state's witnesses. Thus, it is improbable that counsel spoke to Mr. Vining for less than five minutes or that Mr. Vining had any reason to be dissatisfied with Mr. Taylor's services. In fact, if Mr. Vining had legitimate concerns about Mr. Taylor's representation he could have informed the state district court judge. His failure to do so after either preliminary examination undermines his argument. Accordingly, there is no reason to believe that Mr. Taylor was ineffective, and an objective reading of the record does not support the contention that Mr. Taylor failed to meet professional standards in any way.

Defendant next argues that Mr. Taylor was ineffective because he failed to cross-examine Nikitae Kuhn regarding threats she allegedly received. However, the record reveals that cross-examination was unnecessary. Ms. Kuhn testified that she felt threatened due to her involvement with Mr. Vining's case. Mr. Taylor objected and argued that that testimony was not relevant to the crime charged. The state court judge overruled Mr. Taylor and allowed Ms. Kuhn to explain why she was upset. Ms. Kuhn testified:

> The Witness: Okay. My sister, which is – my sister is pregnant by his cousin. My sister called me a couple days ago, which was last week; it was on, I believe a Tuesday. She notified me about this case. She said that L.P. called his cousin and persistently said this case was over. He won it. Now, I didn't know nothing about it, you know, this case was already in progress or anything like that. She called me and told me about the case.
>
> The Court: Okay. Well, just – keep on. Tell me what happened.
>
> The Witness: So something about that I guess he was mad because wouldn't nobody bring him no bond money. I didn't show up in court like I was supposed to, so his girlfriend, or whoever it is , I guess, when she sees me is going to have something to say.
>
> The Court: That was it?
>
> The Witness: And then, I guess, he was mad because wouldn't nobody come up here and help pay for his bail money and I didn't show up and that's basically it.
>
> The Court: Anything more than that?
>
> The Witness: No, just basically I need to watch out because of how he is and –
>
> The Court: All right. We'll deal with that in a minute.

*August 24, 2004 State Prelim. Examination Tr., pgs. 17-18.*

After hearing this testimony, Mr. Taylor appears to have made a strategic decision not to cross-examine Ms. Kuhn about those threats. On an objective basis, the evidence received

5

from Officer Sailor and Ms. Kuhn over the course of two hearings satisfied the prosecutor's burden of probable cause; pressing Ms. Kuhn would likely have elicited more damaging testimony against Mr. Vining. Defense counsel's failure to object to a line of questioning does not constitute ineffective assistance because of the strong presumption that the failure is sound strategy. *See Cobb v. Perimi*, 832 F.2d 342 (6th Cir. 1987). Mr. Taylor's failure to cross-examine Ms. Kuhn regarding threats does not render him ineffective; rather, it demonstrates sound pre-trial strategy.

In his final argument regarding Mr. Taylor, Defendant contends that his failure to cross-examine Ms. Kuhn undermined confidence in the outcome of his federal trial. Mr. Vining believes that had Mr. Taylor attacked Ms. Kuhn's credibility, the federal jury's verdict would have been swayed or altered. The Court disagrees in light of the evidence presented at trial. On June 19, 2004, at approximately 4:00 a.m., Pontiac Police Officer Aaron Sailor was on routine patrol in the area of Huron and Dwight. (Tr., pg. 4). During that time, Officer Sailor noticed a burgundy Buick traveling at a high rate of speed. (Tr., pg. 5). The officer positioned his patrol car behind the Buick and activated the overhead lights for a traffic stop. (Tr., pg. 6). The officer used a spotlight to illuminate the interior of the Buick. (Tr., pg. 6). At that time, the driver looked back at the patrol car. (Tr., pg. 7). Officer Sailor was able to see the driver's face and a female passenger. (Tr., pg. 7). The driver of the Buick then stopped the vehicle and immediately fled on foot through the neighborhood. (Tr., pg. 7). Officer Sailor chased the driver but eventually lost sight of him. (Tr., pg. 8). Officer Sailor returned to the Buick and spoke with the female passenger who was still sitting inside the vehicle. (Tr., pg. 8). The female passenger was later identified as Nikitae Kuhn. (Tr., pg. 8). Ms. Kuhn provided information that eventually led to the identification of the driver. (Tr.,

pg. 9). Officer Sailor then searched the vehicle and found a handgun underneath the driver's seat. (Tr., pg. 10). The firearm was loaded and it had an obliterated serial number. (Tr., pg. 10). Officer Sailor went back to the police station and was able to obtain a photograph of the driver. (Tr., pg. 11). Officer Sailor identified Larry Vining as the driver and person who fled during the traffic stop. (Tr., pg. 11).

Ms. Kuhn testified at the State preliminary examination while under oath but was unavailable at the time of trial. (Tr., pg. 23). Accordingly, her prior testimony was read into the record. (Tr., pg. 24). Ms. Kuhn was riding with Mr. Vining at the time of the traffic stop. (PE Tr., pg. 8). When the police stopped the vehicle, Ms. Kuhn said Mr. Vining took a handgun from his waistband, put it on the floor and ran. (PE Tr., pg. 8). Ms. Kuhn stayed inside the car after Mr. Vining fled on foot. (PE Tr., pg. 13). Ms. Kuhn spoke to the police once they returned to the car and told them what she saw. (PE Tr., pg. 13). Two months after the initial traffic stop, Pontiac Police Officer Crampton observed Vining driving another Buick vehicle. (Tr., pg. 16). Officer Crampton ran the license plate, discovered outstanding felony warrants and initiated a traffic stop. (Tr., pg. 16). At that time, Vining leaped out of the car and ran into the emergency room of Pontiac Osteopathic Hospital. (Tr., pg. 17). Crampton testified that Vining ran through the emergency room and several floors of the hospital. (Tr., pg. 18). Vining was found hiding in the basement. (Tr., pg. 18). Vining resisted arrest and had to be pepper sprayed before being taken into custody. (Tr., pg. 20).

Contrary to his belief, proof of Vining's culpability did not rest solely on the testimony of Nikitae Kuhn. Her testimony was one piece amongst other substantial evidence of the Defendant's guilt, including Mr. Vining's conduct during the traffic stops – which included two instances of flight. Further, the jury apparently credited the testimony of Officers Sailor

7

and Crampton. Their detailed accounts of the facts coupled with the presence of a weapon assisted in securing Vining's conviction. Lastly, the jury discredited Mr. Vining's testimony. There is no reasonable probability that the outcome of his case would have been different but for Mr. Taylor's alleged errors. Thus, Defendant's claim fails.

> **B.     Dennis Szokolay provided effective assistance during Mr. Vining's federal court trial.**

In his argument relative to federal court counsel, Mr. Vining argues that Mr. Szokolay failed to object when the government provided the jury with a complete copy of Nikitae Kuhn's preliminary examination transcript, to follow along while portions were read into the record. Mr. Vining argues further that "the jury read the highly prejudicial and unchallenged testimony of Ms. Kuhn" which included evidence that she felt threatened. (Def.'s Br. in Supp. of §2255 Mot., pg. 14). However, there is nothing in the record to support Mr. Vining's claims. On May 11, 2006, this Court held a hearing to determine what portions of Ms. Kuhn's state court testimony were admitted into evidence. It concluded that it "excluded the general discussion of [Kuhn's] fear or happiness about being [in the state court proceeding], but let in testimony about bringing the bond money. *See May 11, 2006 Evidentiary Hr'g Tr., pg. 4*. Further, during trial this Court expressly stated the following during its charge to the jury:

> Let me just caution the jurors. Transcripts are not exhibits. It's just to help you follow the testimony and you're not going to be able to take these transcripts with you into the jury room for deliberations, so if you need to make notes about what was said, feel free to do so. But I just don't want you to think that you're going to have those transcripts with you.

*Trial Tr., Volume II at pg.* 23.

Although the unredacted transcripts were distributed to the jurors, they were instructed by

8

the court not to consider the transcripts as evidence and they were not allowed to retain the transcripts after the testimony was read into the record; there is no reason to believe that the jury disregarded those instructions. *Hill v. Mitchell*, 400 F.3d 308, 325-26 (6th Cir. 2005). Thus, there is no evidence that the jury actually read portions of the transcript involving threats or that it improperly relied on the unredacted transcripts in making its decision. In fact, the Court of Appeals agreed when it reviewed this issue involving the transcript. The Sixth Circuit held "the content of the material [did] not measure up to the degree of prejudice which [would] result [] in reversal. *See United States v. Vining*, No. 05-2125, 2007 WL 1580099, at *6 (6th Cir. May 31, 2007). Thus, the result of Mr. Vining's trial would not have been different even if Mr. Szokolay had objected when Ms. Kuhn's unredacted transcript was presented to the jury. Apparently, Mr. Szokolay did not believe the jury would review or consider testimony that was never a part of the record so he chose not to object. Indeed, counsel is not required to raise futile challenges in order to avoid a claim of ineffective assistance. *McQueen v. Scroggy*, 99 F.3d 1302, 1328 (6th Cir. 1996) ("We . . . reject [defendant's] claim that his attorney was ineffective for failing to pursue this matter since to do so would have been futile. It is not ineffective assistance to fail to raise erroneous claims"). This Court concludes that Mr. Szokolay's representation of Mr. Vining was not ineffective, and Defendant's motion is denied.

### III. Conclusion

Defendant has met neither his burden to show that the performances of his state and federal counsel were deficient, nor his burden to show that an alleged deficiency in their performances caused outcome determinative prejudice. Here, Defendant's arguments fail to show that there was even a possibility of prejudice. Given the specific errors of

ineffective assistance alleged by Defendant in this matter, he has not, and simply cannot, show that actual prejudice occurred. Because he has failed to establish ineffective assistance of counsel, a hearing is not warranted and his motion is denied.


                                                s/Nancy G. Edmunds
                                                Nancy G. Edmunds
                                                United States District Judge

Dated: December 16, 2008

I hereby certify that a copy of the foregoing document was served upon counsel of record on December 16, 2008, by electronic and/or ordinary mail.

                                                s/Carol A. Hemeyer
                                                Case Manager